**AFFIDAVIT**

I, JEREMIAH DEVLIN, being duly sworn, depose and say:

1.  I am a Special Agent with the Internal Revenue Service, Criminal Investigation Division ("IRS"). I have been employed with the IRS for approximately four years. I am currently assigned to a group that investigates tax fraud and the willful failure to file a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1, with the U.S. Department of the Treasury ("Treasury"), disclosing that a U.S. person had a financial interest in, and signature and other authority over, a financial account in a foreign country, in violation of Title 31, United States Code, Sections 5314 and 5322(a). I have also participated in investigations that focus on the use of foreign bank accounts by United States taxpayers who willfully conceal assets and income from the IRS and the Treasury.

2.  The information in this affidavit is based on my personal knowledge, information provided to me by others, including other law enforcement officials and civilian witnesses, as well as my review of documents associated with the case. I am fully aware of the facts and circumstances concerning this investigation and have participated in significant aspects of this investigation.

3.  The information contained in this affidavit is submitted for the sole purpose of demonstrating probable cause to obtain a criminal complaint against LOTHAR HOESS, for violations of Title 31, United States Code, Sections 5314 and 5322(a), for willful failure to file with the Treasury a Report of Foreign Bank and Financial Accounts, Form TD F 90-22.1, for the years 2005, 2006, 2007, and 2008. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not contain all of the information known to me and/or other law enforcement officers involved in this case.

4.     LOTHAR HOESS is a businessman who is the managing director of Paper Graphics International, Inc., located in Amherst, New Hampshire.  Based on documents produced by UBS, since at least 2005, it appears that LOTHAR HOESS has controlled IOSE Limited, an entity incorporated in the Republic of Ireland.

5.     LOTHAR HOESS is an Austrian national who has been a legal permanent resident of the United States since September 25, 1969.  He travels internationally using a passport issued by the Republic of Austria.

## OBLIGATION TO REPORT FOREIGN BANK ACCOUNTS

6.     Citizens and residents of the United States who have a financial interest in, or signature authority over, a financial account in a foreign country with an aggregate value of more than $10,000 at any time during a particular year are required to file with the Treasury a Report of Foreign Bank and Financial Accounts on Form TD F 90-22.1 (the "FBAR").  The FBAR for the applicable year was due by June 30 of the following year.

7.     A United States citizen or resident also has an obligation to indicate on the Schedule B of a U.S. Individual Income Tax Return, Form 1040, whether that individual had an interest in a financial account in a foreign country by checking "Yes" or "No" in the appropriate box and identifying the country where the account was maintained.  Further, that individual has an obligation to report all income earned from foreign bank accounts on the tax return.

## INVESTIGATIVE BACKGROUND

8.     On February 18, 2009, as part of a deferred prosecution agreement (the "Agreement") entered into with the United States government, UBS AG ("UBS"), Switzerland's largest bank, admitted that it conspired with certain United States taxpayers to defraud the

United States and its agency, the IRS. The factual admissions by UBS are the basis for the information contained in paragraphs 9 through 12 of this affidavit.

9. As admitted to by UBS, beginning in 2000 and continuing until 2007, UBS, through certain private bankers and managers in the United States cross-border business, participated in a scheme to defraud the United States and its agency, the IRS, by actively assisting or otherwise facilitating a number of United States individual taxpayers in establishing accounts at UBS in a manner designed to conceal the United States taxpayers's ownership or beneficial interest in said accounts. In this regard, said private bankers and managers facilitated the creation of such accounts in the names of offshore companies, allowing such United States taxpayers to evade reporting requirements and to trade in securities as well as other financial transactions.

10. In connection with the establishment of such offshore company accounts, UBS private bankers and managers accepted and included in UBS's account records IRS Forms W8-BEN, Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding, (or UBS's substitute forms) provided by the directors of the offshore companies which represented, under the penalties of perjury, that such companies were the beneficial owners, for United States income tax purposes, of the assets in the UBS accounts. In certain cases, the IRS Forms W8-BEN (or UBS's substitute forms) were false or misleading in that the United States taxpayer who owned the offshore company actually directed and controlled the management and disposition of the assets in the company accounts and/or otherwise functioned as the beneficial owner of such assets in disregard of the formalities of the purported corporate ownership.

11. Additionally, said private bankers and managers would actively assist or otherwise facilitate certain undeclared United States taxpayers, who such private bankers and managers knew or should have known were evading United States taxes, by meeting with such clients in the United States and communicating with them via United States jurisdictional means on a regular and recurring basis with respect to their UBS undeclared accounts. This enabled the Untied States clients to conceal from the IRS the active trading of securities held in such accounts and/or the making of payments and/or asset transfer to or from such accounts.

12. As part of the Agreement, UBS agreed to provide the identities and account information for certain United States clients to the United States government that were involved in the scheme to defraud.

## INVESTIGATIVE DETAILS

13. I have reviewed documents provided by UBS concerning LOTHAR HOESS's accounts at UBS in Switzerland. These documents are the basis for the information contained in paragraphs 14 through 27 of this affidavit.

14. From 2005 through 2008, there was an account maintained at UBS in Switzerland in the name of Terry Property, SA ("Terry Property"), a Belizean corporation incorporated on July 24, 2000.

15. According to internal UBS documents, including the Form A, Verification of the Beneficial Owner's Identity, dated October 10, 2005, LOTHAR HOESS and his wife were beneficial owners of the Terry Property account at UBS. UBS documents listed an address for LOTHAR HOESS and his wife in Hollis, New Hampshire, in Hillsborough County within the District of New Hampshire.

16. UBS maintained in the file for the Terry Property account a false W-8BEN form on which it was stated that Terry Property, and not LOTHAR HOESS, was the beneficial owner of the Terry Property account.

17. From 2005 through 2008, there was an account maintained at UBS in Switzerland in the name of IOSE Limited ("IOSE"), an Irish corporation organized incorporated on or about April 2, 2004.

18. According to internal UBS documents, including the Form A, Verification of the Beneficial Owner's Identity, dated October 10, 2005, LOTHAR HOESS was the beneficial owner of the IOSE account at UBS. UBS documents listed LOTHAR HOESS's address in Hollis, New Hampshire, in Hillsborough County within the District of New Hampshire.

19. UBS maintained in the file for the IOSE account a false W-8BEN form on which it was stated that IOSE, and not LOTHAR HOESS, was the beneficial owner of the IOSE account.

**SOURCE OF FUNDS AND ACCOUNT ACTIVITY IN THE UBS ACCOUNTS**

20. In or about 2005, LOTHAR HOESS maintained bank accounts in the names of Terry Property and IOSE at Bank Ehinger & Armand von Ernst AG in Zurich, Switzerland. In December 2005, he transferred over €475,000 (approximately $562,376 as of December 31, 2005) from those accounts to the newly-created Terry Property account at UBS.

21. In 2006, LOTHAR HOESS made additional transfers in amounts in excess of $10,000 from the accounts at Bank Ehinger & Armand von Ernst AG in Zurich, Switzerland to the Terry Property account at UBS.

22.     Documents produced by UBS indicate that from 2006 to 2008 receipts from the sales of office equipment and accessories were deposited into the IOSE account at UBS. Documents produced by UBS indicate that 95% of the profit earned by IOSE from such sales were periodically transferred from the IOSE account to the Terry Property account.

23.     Documents produced by UBS AG indicate that from 2006 through 2008, LOTHAR HOESS caused numerous wire transfers of funds to be made from the Terry Property account at UBS to business throughout the world, including the United States. The documents produced by UBS specifically state that the transfers were made either "on behalf of" or "for the benefit of" LOTHAR HOESS for, among other things, the purchase of luxury sports cars, accessories and restoration services.

24.     In or about October 2007, LOTHAR HOESS and his wife traveled to Zurich, Switzerland to meet with bankers at UBS to discuss the status of their investments.

25.     From October 2008 through January 2009, LOTHAR HOESS transferred the contents of the Terry Property and IOSE accounts at UBS to accounts at Swiss Bank Number 1 in Geneva, Switzerland and Swiss Bank Number 2 in Zurich, Switzerland.

26.     From 2005 through 2008, LOTHAR HOESS earned interest and dividend income from the IOSE and Terry Property accounts at UBS

27.     From December 31, 2005 through December 31, 2008, LOTHAR HOESS's account at UBS in Switzerland in the name of Terry Property contained assets in excess of $10,000.

28.     From December 31, 2005 through December 31, 2008, LOTHAR HOESS's account at UBS in Switzerland in the name of IOSE contained assets in excess of $10,000.

29.     Based upon a review of documents obtained during the course of the investigation, there is probable cause to believe that Terry Property, was a nominee entity created by LOTHAR HOESS and others that was utilized to conceal his beneficial ownership in his UBS Swiss bank account.  By opening the account in the name of the nominee entity, LOTHAR HOESS attempted to conceal his offshore assets and income from the IRS and the Treasury.

## TAX RETURN AND FBAR INFORMATION

30.     For tax years 2005 through 2008, LOTHAR HOESS was required to file a United States tax return, to report his worldwide income, and to declare the existence of any foreign based financial account in which he had an interest or a signature or other authority over that contained assets in excess of $10,000.  These returns were required to be signed under the penalties of perjury with the declaration that the return and accompanying schedules and statements were examined by LOTHAR HOESS and that to the best of LOTHAR HOESS's knowledge and belief, the return and accompanying schedules and statements were true, correct, and complete.

31.     LOTHAR HOESS filed a United States Individual Tax Return, Form 1040, and accompanying schedules and attachments with the Internal Revenue Service for tax years 2005 through 2008.  The "Instructions" to Schedule B, attached to the Form 1040, require that the form be filed with the return when the taxpayer "had a foreign account ."

32.     From 2005 through 2007, LOTHAR HOESS and his wife acknowledged on Schedule B, Part III to the Forms 1040 that they filed that they had a financial interest in, and signature and other authority over, a financial account in a foreign country though they identified

that the account was held in Italy.  They did not disclose the bank accounts they held in Switzerland.  Further, they did not report on those tax returns any interest and dividend income earned on his Bank Ehinger & Armand von Ernst AG in 2005 or from  his UBS bank accounts in 2005, 2006 or 2007.

33.     LOTHAR HOESS and his wife failed to file a Schedule B with their Form 1040 for 2008 even though they were required to file such form as they had several financial accounts in Switzerland during that year.  Further, they did not report on the tax return any interest or dividend income earned from his bank accounts at UBS, from the account at Swiss Bank Number 1, or from Swiss Bank Number 2.

34.     LOTHAR HOESS failed to file an FBAR reporting his bank accounts in Switzerland for 2005, 2006, 2007 and 2008 even though he knew he was required to do so by law.

35.     Lothar Hoess understood the obligation to file an FBAR in those years and report his foreign bank accounts as he had filed FBARs for a bank account that he had in Italy at Cari Verona in 1997, 2000 and 2001.

## CONCLUSION

Based upon my review of documents, I believe probable cause exists to believe that LOTHAR HOESS did knowingly and willfully fail to file with the U.S. Department of the Treasury a Report of Foreign Bank and Financial Accounts on Form TD F 90-22.1, disclosing that he had a financial interest in, and signature and other authority over, a financial account in a foreign country, namely, bank accounts at UBS AG in Switzerland, which had an aggregate value of more than $10,000 during the years 2005, 2008, 2007 and 2008 all in violation of Title

31, United States Code, Sections 5314 and 5322(a).

                                                    /s/ Jeremiah Devlin
Jeremiah Devlin
Special Agent, IRS

Subscribed to and sworn to before me on ____ day of January, 2010, in Concord, New Hampshire.

_____

James R. Muirhead
United States Magistrate Judge